## SUPREME COURT.

THE UNION DIME SAVINGS INSTITUTION OF THE CITY OF NEW YORK agt. MARY J. QUINN and others.

*Mortgage foreclosure — Stipulation — Meaning of.*

Where an action by plaintiff to foreclose a mortgage for $20,000 upon certain premises, of which defendant was owner, was pending in April, 1878, and she interposed an answer setting up a counter-claim, and then a stipulation was entered into that the answer should be withdrawn, the suit discontinued, the mortgage reduced to $16,000, and possession to be given to plaintiff, who, out of the rents, should pay the interest, taxes and necessary repairs, and credit the balance on the principal; such possession to continue until the principal of the mortgage should be reduced to $15,000 and all taxes paid, defendant giving a collateral bond for the $16,000 and acknowledging that the mortgage was valid and subsisting to the extent of $16,000. In this suit, brought in 1881, to foreclose the mortgage:

*Held,* that the fair meaning of the stipulation was not that the mortgagee was to continue to hold the premises indefinitely, if within a reasonable time it was found that the premises would not produce enough after paying interest, taxes and necessary repairs, to reduce the principal to $15,000; and that after such reasonable time, and three years would be a reasonable time, the mortgage may be foreclosed.

*Special Term, March,* 1882.

*Mr. Ritch,* for plaintiff.

*Mr. Culver,* for defendants.

LAWRENCE, *J.*— On the 24th day of April, 1878, an action brought by the plaintiff against the defendants, Mary J. Quinn and others, for the purpose of foreclosing the mortgage in suit, was pending in this court. The defendant Mary J. Quinn was then the owner in fee of the mortgaged premises subject to the mortgage. On the last mentioned day a stipulation was entered into between the plaintiff and Mary J. Quinn, by which, among other things, it was provided that the answer

which had been interposed by the defendant Quinn should be withdrawn and the suit discontinued, without costs to either party. That the mortgage on the premises should be reduced from $20,000 to $16,000, and all interest from May 1, 1875, to be credited on said mortgage; that all rents due to May 1, 1878, should be collected by and be the property of the plaintiff; that the plaintiff should assume and pay all taxes and assessments chargeable on the property, to April 30, 1878. It was further stipulated that possession of the mortgaged premises should be given to the plaintiff, who was authorized to rent the same for the best price that could be obtained, and out of the rents the plaintiff was to pay the interest, taxes and necessary repairs, and credit the balance, if any, on the principal of said mortgage. The stipulation then provides that plaintiff's possession of said premises shall continue until the principal of said mortgage is reduced to $15,000 and all arrears of taxes and assessments have been paid. A fee of $150 was agreed to be paid to the defendants' attorney, and Mary J. Quinn agreed to execute a collateral bond for the payment of the amount remaining due on the mortgage, and John I. Quinn and Mary I. Quinn were to acknowledge that the bond and mortgage were valid and subsisting obligations upon the premises to the extent of $16,000, and that no off-sets, counter-claims or defenses existed thereto. All of these latter provisions have been carried out. Under this stipulation the answer of the defendant Quinn was withdrawn, and the plaintiff entered into the possession of the mortgaged premises and has ever since continued in possession of the same. It appears from the evidence that sufficient has not been realized by the plaintiff from the rental of the property to make any reduction in the principal sum secured by the mortgage. It is insisted, on the part of the defendant, that this action cannot on that account be maintained.

I was strongly inclined to that opinion upon the trial, but subsequent reflection has convinced me that the objection is not sound. It is well settled that the mortgagee in possession

takes the rents and profits, in the *quasi* character of trustee or bailiff of the mortgagor, and that they are to be applied in equity as an equitable set-off to the amount due on the mortgage debt. The law does not apply them as received to the payment of the mortgage. It depends upon the result of an accounting upon equitable principles whether any part of the rents and profits received shall be so applied (*Hubbell* agt. *Moulson*, 53 *N. Y.*, 228).

In this case the plaintiff entered into the possession of the mortgaged premises by agreement between the parties. But, after all, a careful reading of the stipulation reveals the fact, that the rights and position of the parties were in the main to be but little different from those which the law would have implied and enforced if the mortgagee had gone into possession of the premises without such an agreement, and even in hostility to the defendant (*Hubbell* agt. *Moulson* 53 *N. Y.*, 228, 229 ; *Thomas on Mortgages*, 79, *et seq.*, *and cases cited*).

It is true that by the stipulation it was agreed that the mortgagee should retain possession until the mortgage debt was reduced to $15,000, and until all arrears of taxes and assessments have been paid. This would have been less than the mortgagee's right if he had obtained possession in hostility to the defendant (*Hubbell* agt. *Moulson*, *supra ; Thomas on Mortgages*, 79, 83, *and cases cited*).

It will be observed that by the stipulation, Mrs. Quinn and her husband acknowledged that the bond and mortgage in suit are valid and subsisting obligations upon the premises to the extent of $16,000, and that there were no offsets, counterclaims or defenses whatsoever thereto. This suit was commenced June 7, 1881, or more than three years after the stipulation was entered into. I cannot think that the fair meaning of the stipulation was that the mortgagee was to continue to hold the possession of the premises indefinitely, if within a reasonable time it was found that the premises would not produce enough, after paying interest, taxes and necessary repairs, to reduce the principal due upon the mortgage to

$15,000. Such a view seems to be inconsistent with the other provisions in the stipulation to the effect that the bond and mortgage was "a valid and subsisting obligation to the extent of $16,000," &c., and also inconsistent with the provision that a collateral bond for $16,000 should be executed by Mary J. Quinn. The agreement reasonably means, I think, that the mortgagee should assume possession, and try, after payment of interest and other charges, to reduce the principal sum to $15,000, the mortgage, however, still remaining due. If after a reasonable time such a result was found to be unattainable, then I think that the agreement means that the mortgagee should account upon the same principles, and be held to the same responsibility, as any other mortgagee would be who is in possession, not having any agreement with the mortgagor (*See Thomas on Mortgages*, 81, 82, *and cases cited; Hubbell* agt. *Moulson*, 53 *N. Y.*, 228, 229).

It does not seem reasonable that there being indisputably $16,000 due on the mortgage, the plaintiff was to hold the premises indefinitely, in the vain expectation that in some far distant future the income of the property would bring about a reduction of the principal sum to $15,000. It is said, however, that as the defendant gave up a counter-claim, alleged in her first answer, the construction just given to the stipulation would be unjust. The reply to this position obviously is, that the defendant received a credit upon the mortgage of $4,000, and a withdrawal of the pending suit for foreclosure.

The fee of her attorney was also paid, and a postponement of any further proceedings for foreclosure, for a reasonable time, to enable the plaintiff to try to effect the reduction of the principal to $15,000. In order that the difference between $15,000 and $16,000 should not be lost to the plaintiff, the provisions of the stipulation in reference to the collateral bond, and as to there being no defenses to the mortgage, were inserted. This was a fair compromise of the matters at issue. The only question remaining then is as to whether a reasonable time had elapsed when this action was commenced to

have it fairly determined whether the principal sum could be reduced to $15,000. Three years and more having elapsed between the date of the stipulation and the commencement of the suit, I think this question must be determined in the affirmative, and that there must be judgment for the plaintiff.

As the testimony in respect to the rents and amounts received for interest and the amounts expended for taxes, assessments, &c., is not before me, the findings will be settled on three days' notice.